IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL PIERCE, et al., | ) | CASE NO.  1:04CV0544 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | MAGISTRATE JUDGE HEMANN |
| v. | ) | |
| | ) | |
| COLEMAN TRUCKING, INC., et al., | ) | **MEMORANDUM OF OPINION** |
| | ) | Docket #74 |
| Defendants. | ) | |

This case is before the magistrate judge on consent.  Pending is the motion of
defendants, Coleman Trucking, Inc. ("Coleman"); Seab Coleman, Sr.; Seab Coleman, Jr.;
Mark Coleman ("M. Coleman"); Jacqueline Coleman; Mrs. Seab Coleman, Sr.; and Coleman
Development, Inc. ("Coleman Dev."), for summary judgment (Def. mot."; Docket #74).
Plaintiffs, Michael Pierce ("Pierce"), Charles Holmes, Tyrone Smith, Cedric Brooks, and Oliver
Peterson, oppose defendants' motion ("Pl. opp."; Docket #82).  For the reasons given below
the court overrules defendants' motion.

I.

The court views the facts, as it must, in the light most favorable to the party opposing
the motion for summary judgment.  Plaintiffs allege, or do not deny, the following facts.

Coleman and Coleman Dev. are companies which specialize in asbestos removal.
The companies are owned and/or operated by the individual defendants in this case.  The

persons who are officers of Coleman hold the same positions in Coleman Dev., and those individuals are paid by Coleman. The only difference between Coleman and Coleman Dev. is that Coleman is used for non-union jobs and Coleman Dev. is used for union jobs.

Plaintiffs were hired by Coleman and Coleman Dev. to assist with asbestos abatement on various projects. Plaintiffs claim that Coleman and Coleman Dev. did not properly record their hours worked and, as a consequence, failed properly to pay overtime for all hours worked in excess of 40 hours in a workweek, failed to pay plaintiffs for work performed in defendants' warehouse, failed to pay for compensable drive time, and failed to pay for time spent donning and removing protective gear.

Plaintiffs bring this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* Plaintiffs seek back pay, liquidated damages, injunctive relief, and attorney fees and costs. Defendants now move for summary judgment on plaintiffs' claims.

II.

Summary judgment is appropriate only when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The moving party must demonstrate to the court the absence of a genuine issue of material fact through reference to pleadings and discovery responses. *Id.* at 323. The nonmoving party must then demonstrate that a material issue of fact exists for trial. *Id.* at 324.

When a court evaluates a motion for summary judgment, "the inferences [that the court draws] from the underlying facts . . . must be viewed in the light most favorable to . . . the party

2

opposing the motion . . . ."  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *see also Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 473 (1962); *Aetna Ins. Co. v. Loveland Gas & Elec. Co.*, 369 F.2d 648 (6th Cir. 1966).  This means that the court must regard the nonmoving party's uncontradicted allegations as true and give the benefit of the doubt to the nonmoving party's assertions when they conflict with the movant's assertions.  *Bishop v. Wood*, 426 U.S. 341 (1976); *Bosely v. City of Euclid*, 496 F.2d 193, 197 (6th Cir. 1974).

The court's treatment of facts and inferences in a light favorable to the nonmoving party does not relieve that party of its obligation "to go beyond the pleadings" to oppose an otherwise properly supported motion for summary judgment under Rule 56(e).  *See Celotex,* 477 U.S. at 324.  The nonmoving party must oppose a proper summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves. . . ."  *Id.*  A scintilla of evidence in favor of the nonmoving party is not sufficient.  There must be enough evidence that a reasonable jury could find for the nonmoving party.  *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1477 (6th Cir. 1989).

III.

Plaintiffs raise claims pursuant to the FLSA.  Congress enacted the FLSA in 1938 to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers . . . ."  29 U.S.C. § 202(a), (b).  Because the FLSA is a remedial statute, it must be construed broadly to effectuate its "humanitarian and remedial" purpose.  *A.H. Phillips, Inc. v. Walling,* 324 U.S. 490, 493 (1945).  The FLSA requires, *inter alia*, that employers keep payroll records and pay

3

employees a minimum hourly wage and overtime.  29 U.S.C. §§ 201-11.  It also requires that an employer pay overtime if an employee works more than 40 hours in one workweek.  *Id.* at § 207(a)(2)(C).

Plaintiffs contend that defendants failed to pay them overtime due when they worked for Coleman and Coleman Dev.  Plaintiffs argue that defendants avoided paying them overtime in three ways:  (1)  defendants acknowledged that plaintiffs worked over 40 hours a week for Coleman or Coleman Dev. but defendants failed to pay overtime; (2)  plaintiffs worked more than 40 hours a week for Coleman and Coleman Dev. combined but defendants failed to pay overtime when plaintiffs did so; and (3) defendants failed to keep accurate work records, thus failing to record and properly compensate time worked, including time worked in excess of 40 hours a week.  Defendants reply that  (1) plaintiffs were fully compensated when they worked more than 40 hours a week for Coleman or Coleman Dev.; (2) defendants were not required to pay plaintiffs overtime when plaintiffs worked more than 40 hours in one workweek at Coleman and Coleman Dev. combined; and (3) defendants' records reflect all hours worked in a manner consistent with the requirements of the FLSA.

A.    *Alleged failure to pay to pay overtime*

    1.    *Whether defendants paid overtime when plaintiffs worked for more than 40 hours in a workweek for Coleman or Coleman Dev.*

Defendants assert the following in answer to plaintiffs' allegation that defendants failed to pay overtime when plaintiffs worked more than 40 hours in a workweek for Coleman or Coleman Dev.:  "While Defendants agree that the payroll records reflect that Plaintiffs occasionally worked over forty hours in a workweek, there is no indication whatsoever on such

4

payroll records that Plaintiffs were not paid overtime for those particular weeks." Def. opp. at 2. Defendants proclaim that the payroll records "speak for themselves and demonstrate that Plaintiffs were fully compensated for their work. . . ." *Id.* at 3.

The payroll records indeed do speak for themselves, and their speech is fatal to defendants' motion. Plaintiffs appended the payroll records of Coleman and Coleman Dev. to Pl. opp. as Exhibit 1. The payroll records include daily handwritten tallies of the work performed by each employee for Coleman and Coleman Dev. during the relevant time period. They also include weekly records of each employee's hours worked per day and per week. The weekly records include, *inter alia*, the number of hours which are to be paid as regular hourly pay, overtime, sick pay, holiday pay, additional pay, or salary. Thus, the records indicate quite clearly how many hours each employee worked each week, whether the employee was paid overtime, and how many hours were compensated with overtime pay.

The payroll records show that defendants' employees worked more than 40 hours in a workweek and were fully compensated with overtime pay on at least 64 occasions. They also show that on at least 16 occasions defendants' employees worked more than 40 hours in a workweek and did *not* receive overtime pay. Included in these 16 failures to pay overtime are at least two occasions on which each plaintiff was not properly paid overtime. The record flatly contradicts, therefore, defendants' assertions that plaintiffs were fully compensated for their work and that there is no indication whatsoever on the payroll records that plaintiffs were not paid overtime for the weeks at issue in this case.[1]

_____

[1] The court presumes that defense counsel's errors in this regard were inadvertent, *i.e.*, the result of a failure to examine the payroll records thoroughly.

5

2.   *Whether defendants should have paid plaintiffs overtime when they worked more than forty hours in a workweek for Coleman and Coleman Dev. combined*

Plaintiffs contend that defendants should have paid them overtime and failed to do so when plaintiffs worked more than 40 hours a week for Coleman and Coleman Dev. combined. Plaintiffs argue that Coleman and Coleman Dev. are joint employers which must be considered a single employer for purposes of determining whether overtime is due to employees who work for both entities.  Plaintiffs also argue in the alternative that Coleman and Coleman Dev. are a single enterprise for purposes of the FLSA.[2]  Defendants deny that Coleman and Coleman Dev. are joint employers and also deny that they are a single enterprise.

a.   *Whether Coleman and Colman Dev. are joint employers*

When an employee works for more than one company at a time, it is necessary to determine whether the employee's employers should be treated separately or jointly for purposes of determining the employers' responsibilities under the FLSA.  Title 29 C.F.R. § 791.2 ("§ 791.2") addresses the problem of computing hours worked by an employee for the purpose of determining whether overtime is owed when the employee works for more than

---

[2]   Plaintiffs tend to blur "enterprise" and "joint employers," but these are distinct concepts.  "Whether two companies constitute a single enterprise for FLSA coverage and whether they are liable as joint employers under § 207 are technically separate issues." *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 917 (9th Cir. 2003) (citing as an example *Patel v. Wargo,* 803 F.2d 632, 637 (11th Cir. 1986)).  *See also* 29 C.F.R. § 779.203 ("Distinction between 'enterprise,' 'establishment,' and 'employer.'").

one employer during a week:

> A single individual may stand in the relation of an employee to two or more employers at the same time under the Fair Labor Standards Act of 1938, since there is nothing in the act which prevents an individual employed by one employer from also entering into an employment relationship with a different employer.  A determination of whether the employment by the employers is to be considered joint employment or separate and distinct employment for purposes of the act depends upon all the facts in the particular case.  If all the relevant facts establish that two or more employers are acting entirely independently of each other and are completely disassociated with respect to the employment of a particular employee, who during the same workweek performs work for more than one employer, each employer may disregard all work performed by the employee for the other employer (or employers) in determining his own responsibilities under the Act.  On the other hand, if the facts establish that the employee is employed jointly by two or more employers, i.e., that employment by one employer is not completely disassociated from employment by the other employer(s), all of the employee's work for all of the joint employers during the workweek is considered as one employment for purposes of the Act.   In this event, all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the act, including the overtime provisions, with respect to the entire employment for the particular workweek.  In discharging the joint obligation each employer may, of course, take credit toward minimum wage and overtime requirements for all payments made to the employee by the other joint employer or employers.

29 U.S.C. § 791.2(a) (footnotes omitted.)

Section 791.2 also provides guidelines for determining when a joint employment

relationship exists:

> Where the employee performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek, a joint employment relationship generally will be considered to exist in situations such as:
>
> (1) Where there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees; or
>
> (2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or
>
> (3) Where the employers are not completely disassociated with respect to the

7

employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

Section 791.2(b).  Footnote 5 appended to § 791.2(a) also notes the following:

Both the statutory language . . . and the Congressional purpose . . . require that employees generally should be paid overtime for working more than the number of hours specified . . . , irrespective of the number of employers they have.  Of course, an employer should not be held responsible for an employee's action in seeking, independently, additional part-time employment.  But where two or more employers stand in the position of "joint employers" and permit or require the employee to work more than the number of hours specified . . . , both the letter and the spirit of the statute require payment of overtime.

29 U.S.C. § 791.2(a) n.5.

"Joint employer" is a term of statutory construction and is not limited by any common law definitions of the term.  *Bartels v. Birmingham,* 332 U.S. 126 (1972).  Moreover, the term should be given an expansive interpretation to effectuate the remedial intent of the FLSA.  *Karr v. Strong Detective Agency, Inc.*, 787 F.2d 1205, 1207 (7th Cir. 1986); *Donovan v. Janitorial Servs.,* 672 F.2d 528 (5th Cir. 1982); *Real v. Driscoll Strawberry Assoc.,* 603 F.2d 748, 754 (9th Cir. 1979).

In the instant case, Coleman and Coleman Dev. are clearly joint employers by virtue of § 791.2(b)(2) & (3).  In his deposition M. Coleman testified as follows:

Q.     What is your position with Coleman Trucking?

A.     Vice president. . . .

Q.     Do you have a position with Coleman Development?

A.     Yes.

Q.     What is your position there?

8

A.      Vice president.

Q.      Is the structure of Coleman Development the same as the – relative to officers and hierarchy – the same as with Coleman Trucking?

A.      Yes.

                    *        *        *        *        *

Q.      . . . You are . . . an officer – you're an officer for both Coleman Trucking and Coleman Development, correct?

A.      Correct.

Q.      But all your income comes from Coleman Trucking?

A.      Correct.

Q.      What about Jacqueline Walker, does she work for both companies?

A.      She works for Coleman Trucking.

Q.      Does she ever do anything for Coleman Development?

A.      No.

Q.      Okay.

A.      Well, it's kind of confusing a little.

Q.      Go ahead.

A.      Coleman Development pays Coleman Trucking for its services.  So actually, she works for Coleman Trucking.

Q.      Explain that again.  Coleman --

A.      – Development pays Coleman Trucking for its services, administrative services.

Q.      So Coleman Development has this chunk of money and they pay Coleman Trucking?

9

A.      They pay for the use of what they, what Coleman Trucking provides for them.  So she works for Coleman Trucking, but she does do some of the Coleman Development work.

Q.      What about Clifton Coleman, does he – well, who is Clifton Coleman?

A.      He's an estimator that works for us.

Q.      Does he work for Coleman Development at times?

A.      He works for Coleman Trucking.

Q.      Does he ever do estimating jobs for Coleman Development?

A.      He works for Coleman Trucking, and in the course of his working for Coleman Trucking, on occasion he bids Coleman Development work, yes.

Q.      Okay.  But all of his income comes from Coleman Trucking.

A.      Correct, that's who he works for.

Q.      Now, what about Steve Coleman, III, what's his position?

A.      President.

Q.      Does he also – is he also president of Coleman Development?

A.      Correct.

Q.      Does he get any income from Coleman Development?

A.      When you say income, you mean like salary?

Q.      Yes.

A.      No, he's the same arrangement.

Q.      As what, same arrangement as --

A.      As all the rest of them I just described.

Q.      Does he have the same arrangement as you?

10

A.      Yes.

Q.      And your arrangement is what?

A.      Coleman Development pays Coleman Trucking for the administrative services that they provide.

*        *        *        *        *

Q.      Well, what's your position then with Coleman Development? . . .

A.      I'm the vice president.

Q.      And what are your duties with Coleman Development?  I mean, how do your duties with Coleman Development differ?  How do they differ from your duties with Coleman Trucking?

A.      I get paid from Coleman Trucking.  That's how they differ.  What I do for Coleman Development is accomplished in what I do for Coleman Trucking.

Depo. of M. Coleman at 4-5, 94-97, 98-99.

M. Coleman's testimony makes clear that (1) in cases in which one employee works for both companies, Coleman is acting directly in the interest of Coleman Dev. in relation to that employee, and (2) Coleman is under common control of the employee with Coleman Dev. The court concludes, therefore, that Coleman and Coleman Dev. are joint employers of persons who work for both companies.

*b.      Whether Coleman and Coleman Dev. are a single enterprise*

In addition to arguing that Coleman and Coleman Dev. are joint employers within the meaning of § 791.2, plaintiffs also argue in the alternative that Coleman and Coleman Dev. are a single enterprise within the meaning of  29 U.S.C. §§ 203(r) ("§ 203(r)") & 207(b).  As an "enterprise," Coleman and Coleman Dev. would be subject to the requirement that any employee whose work for either or both companies totals more than 40 hours in a workweek

11

be paid overtime.  *See* § 207(b) and 29 C.F.R. 779.201.  Section 203(r) defines "enterprise" as follows:

> "Enterprise" means the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units including departments of an establishment operated through leasing arrangements, but shall not include the related activities performed for such enterprise by an independent contractor.

29 U.S.C. § 203(r)(1).

There are "three main elements of the statutory definition of 'enterprise':  related activities, unified operation or common control, and common business purpose."  *Brennan v. Arnheim & Neely, Inc.*, 410 U.S. 512, 518 (1973). "[A]ctivities are 'related' when they are the same or similar . . . ."  *Id.* (quoting S. Rep. No. 145, 87th Cong., 1st Sess., 41; U.S.C.C.A.N. (1961), p.1660).  *See also* 29 U.S.C. § 779.206 ("[A]ctivities are "related" when they are the same or similar, such as those of the individual retail or service stores in a chain . . . .");  *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908 (9th Cir. 2003) (holding that two companies were one enterprise for purposes of the FLSA because both provided home health care services even though they serviced different types of patients under different levels of care with differing eligibility requirements);  *Brock v. Hamad,* 867 F.2d 804, 806 (4th Cir. 1989) (holding that managing single family homes and managing an apartment building were related activities for purposes of the FLSA); and *Brennan v. Plaza Shoe Store, Inc.,* 522 F.2d 843, 848 (8th Cir. 1975) (holding that a shoe store and a dress store engaged in related activities because they both sold "articles of wearing apparel…to the general public entering the premises which housed both stores").  "Common control" refers to shared power or

12

authority to direct or restrain:

> In relation to the performance of the described activities, the "control," referred to in the definition in section 3(r) includes the power to direct, restrict, regulate, govern, or administer the performance of the activities.  "Common" control includes the sharing of control and it is not limited to sole control or complete control by one person or corporation.  "Common" control therefore exists where the performance of the described activities are controlled by one person or by a number of persons, corporations, or other organizational units acting together.  This is clearly supported by the definition which specifically includes in the "enterprise" all such activities whether performed by "one or more corporate or other organizational units."

29 C.F.R. § 779.221.  Common ownership may be considered as a factor in determining common control, but the focus of the inquiry should be on the common direction of related activities.  *Dole v. Odd Fellows  Home Endowment Bd.*, 912 F.2d 689 (4th Cir. 1990).  "[A] common business purpose is generally found where there are related activities and common control."   *A-One Med.*, 346 F.3d at 916 (citing a Wage-Hour Administrator's opinion and collected cases at *Plaza Shoe Store,* 522 F.2d at 848).[3]

The definition of "enterprise" is statutory, and, for purposes of the FLSA, it supercedes

---

[3]  The term "common business purpose" eludes simple definition.  Title 29 C.F.R. § 779.213 explains the term as follows:

> Generally, the term "common business purpose" will encompass activities whether performed by one person or by more than one person, or corporation, or other business organization, which are directed to the same business objective or to similar objectives in which the group has an interest.  The scope of the term "enterprise" encompasses a single business entity as well as a unified business system which performs related activities for a common business purpose.  What is a "common business purpose" in any particular case involves a practical judgment based on the facts in the light of the statutory provisions and the legislative intent.  The answer ordinarily will be readily apparent from the facts.  The facts may show that the activities are related to a single business objective or that they are so operated or controlled as to form a part of a unified business system which is directed to a single business objective.  In such cases, it will follow that they are performed for a common business purpose.

13

all law which would declare to be separate those entities whose activities are related and are under common control:  "We must look beyond formalistic corporate separation to the actual or pragmatic operation and control, whether unified or, instead, separate as to each unit." *See A-One Med.*, 346 F.3d at 915 (quoting *Donovan v. Grim Hotel Co.,* 747 F.2d 966, 970 (5th Cir. 1984); *see also* 29 C.F.R. § 779.202 ("[T]he enterprise includes all such related activities which are performed through 'unified operation' or 'common control' . . . even if they are performed by more than one person, or in more than one establishment, or by more than one corporate or other organizational unit."). Thus, the Supreme Court noted, "[I]t is irrelevant that . . . separate bank accounts are maintained . . . All that is required under the statutory definition is that the respondent's own activities be related and under common control or unified operation."  *Arnheim & Neely*, 410 U.S. at 518.

Coleman and Coleman Dev. engage in related activities.  Both Coleman and Coleman Dev. engage in demolition and asbestos removal; they differ only in that Coleman Dev. is used for jobs requiring union labor.  M. Coleman testified as follows:

> Q.     Is it true that you use Coleman Development for union jobs?
>
> A.     Correct.
>
> Q.     Is it true that the only distinction between Coleman Trucking and Coleman Development is Coleman Development is the union company?
>
> A.     Only distinction.
>
> Q.     Yes, it's for union jobs?
>
> A.     It's for union jobs.
>
> Q.     Is it fair to say that that's really the only distinction between the two companies?

14

    A.     They're two different, separate companies.

    Q.     I understand that.

    A.     But one is for union jobs.

Depo. of M. Coleman at 5-6.  Thus, Coleman and Coleman Dev. engage in related activities: asbestos removal for clients requiring union labor and asbestos removal for clients not requiring union labor.

Coleman and Coleman Dev. also share common control.  In his deposition, M. Coleman testified as follows regarding ownership of the two companies:

    Q.     So you guys own two companies then, Coleman Trucking, Coleman Development?

    MR. KIRSANOW:     Objection.

    A. Yeah.

Depo. of M. Coleman at 94.  M. Coleman later clarified that Coleman and Coleman Dev. were owned by an S-corporation whose shareholders were M. Coleman, his father, his mother, his brother, and his sister.  *Id.* at 100-02.  As has already been shown, the same group of individuals administer both Coleman and Coleman Dev.  The vice-president of both companies testified, "What I do for Coleman Development is accomplished in what I do for Coleman Trucking."  Depo. of M. Coleman at 99.

Having found related activities and common control, and given M. Coleman's testimony that "the only distinction between Coleman Trucking and Coleman Development is Coleman Development is the union company," this court concludes that a finding that the two companies share a common business purpose in inescapable.  The court concludes, therefore, that

15

Coleman and Coleman Dev. are a single enterprise for purposes of the FLSA.

Defendants contend that Coleman and Coleman Dev. are not one entity.  Defendants argue as follows:

> . . . Coleman Development does unionized work while Coleman Trucking does non-Unionized work.  The work force of Coleman development is different than that of Coleman Trucking.  Hourly employees of Coleman Development are paid by Coleman Development, whereas hourly employees of Coleman Trucking are paid by Coleman Trucking.  And most significantly, Coleman Development pays Coleman Trucking for its administrative services in an arm's length manner.

Def. opp. at 7.

Even if these assertions are true, they are irrelevant.  The only relevant questions are whether the activities of both companies are related, whether the companies share common control, and whether the companies have a common business purpose.  In the case of Coleman and Coleman Dev., those questions must be answered in the affirmative.  Coleman and Coleman Dev. are a single enterprise for purposes of the FLSA.

> *c.*     *Whether a reasonable jury might conclude that persons employed by both Coleman and Coleman Dev. were not paid overtime*

Defendants do not take issue with plaintiffs' assertion that some plaintiffs worked more than 40 hours in some workweeks for Coleman and Coleman Dev. combined and that workers who worked more than 40 hours in a workweek for both companies combined were not paid overtime.[4]  As has been shown above, either because Coleman and Coleman Dev.

_____

[4]  M. Coleman testified as follows:

> Q.     And in fact do some employees actually work in the same workweek for Coleman Trucking and Coleman Development?

> A.     Only on occasion.

16

were joint employers or because they were a single enterprise for purposes of the FLSA, defendants should have paid plaintiffs overtime when they worked more than 40 hours in a workweek for both companies combined.  For these reasons the court overrules defendants' motion for summary judgment as it relates to plaintiffs' allegation that defendants failed properly to compensate them for overtime.

B.  *Whether defendants failed properly to compensate employees because defendants failed to record compensable time*

Plaintiffs contend that in several respects defendants kept inaccurate records of employees' hours worked:  (1) defendants failed to record as compensable hours time spent after arriving at defendants' warehouse pursuant to defendants' orders, (2) defendants failed to record compensable drive time to and from defendants' warehouse, (3) defendants failed properly to record compensable time spent donning and removing protective gear before and after work, and (4) defendants failed properly to record compensable time spent removing and donning protective gear before and after lunch.

---

Q.   When they work for both companies, do they get two separate checks?

A.   Yes.

Q.   If it so happens that a person works 25 hours with Coleman Trucking and 20 hours with Coleman Development, they would have two checks, one for 25 and one for 20?

A.   Correct.

Q.   They wouldn't get paid for overtime?

A.   Not unless they work overtime for an individual company.

Depo. of M. Coleman at 6-7.

> 1.     Whether plaintiffs have offered sufficient evidence that defendants failed properly to compensate them because defendants failed to record as compensable hours time spent after arriving at defendants' warehouse pursuant to defendants' orders and time spent driving from and to the warehouse

Plaintiffs allege that defendants failed properly to compensate them for time spent working at defendants' warehouse before a job and time spent driving between the warehouse and the job site.  Defendants deny that plaintiffs were required to work at the warehouse and deny that they are required to compensate plaintiffs' for drive time.  Defendants also contend plaintiffs' fail to offer sufficiently specific evidence to support their claims.

The Portal-to-Portal Act of 1947, 29 U.S.C. § 251 *et seq.*, provides that employers are generally not required to compensate employees for activities preliminary and postliminary to work:

> (a) Except as provided in subsection (b) of this section, no employer shall be subject to any liability or punishment under the [FLSA] . . on account of the failure of such employer to pay an employee . . . overtime compensation, for or on account of any of the following activities of such employee . . .
>
> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
>
> (2) activities which are preliminary to or postliminary to said principal activity or activities which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time . . . at which he ceases, such principal activity or activities.

29 U.S.C. § 254.

There are exceptions, however, to the general rule that employers are not required to pay for preliminary and postliminary activities.  In particular,

> [w]here an employee is required to report at a meeting place to receive instructions or to perform other work there, or to pick up and carry tools, the travel from the designated place to the work place is part of the day's work, and must be counted as hours worked regardless of contract, custom, or practice.

9 C.F.R. § 785.38.

Plaintiffs offer the Declaration of Pierce ("Pierce Dec.") as evidence that defendants sometimes required them to arrive at defendants' warehouse before a job, they sometimes worked at the warehouse before getting a ride to the job, they were required to ride back to the warehouse when the workday was over, they received instructions for the next day's work at the warehouse, and defendants failed to compensate them for work done at the warehouse and drive time between the warehouse and jobs. *See* Pl. opp., Exh. 4; *see also* M. Coleman depo. at 9-10. Defendants reply that plaintiffs were not required to go to the warehouse and, therefore, any work done voluntarily at the warehouse and drive time between the warehouse and a job is not compensable.

Plaintiffs have created an issue of fact regarding whether they were required to go to the warehouse before and after jobs and regarding whether they were required to work at the warehouse. Defendants' argument that plaintiffs' work at the warehouse was voluntary work that defendants were not required to compensate is not well-taken: "[W]here two or more employers stand in the position of 'joint employers' and *permit* . . . the employee to work more than the number of hours . . . , both the letter and the spirit of the statute require payment of overtime." 29 C.F.R. § 791.2 n.5 (emphasis added). If defendants permitted plaintiffs to work, then defendants are required to compensate plaintiffs for that work. Defendants admit that they did not do so.

19

Defendants also argue that plaintiffs fail to offer sufficient evidence regarding when and how long plaintiffs performed compensable work and on what dates plaintiffs accrued compensable drive time.  This argument, too, is not well taken.

Defendants do not deny plaintiffs' assertion that defendants' records of employees' work were inaccurate prior to September 2003, and plaintiffs offer an excerpt from a Department of Labor Report citing Coleman for inaccurate recordkeeping.  Pl. opp, Exh. 5.  The burden of proof enunciated in  *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), therefore, applies in this case:

> An employee who brings suit . . . for unpaid minimum wages or unpaid overtime compensation, together with liquidated damages, has the burden of proving that he performed work for which he was not properly compensated.  The remedial nature of this statute and the great public policy which it embodies, however, militate against making that burden an impossible hurdle for the employee.  Due regard must be given to the fact that it is the employer who has the duty . . . to keep proper records of wages, hours and other conditions and practices of employment and who is in position to know and to produce the most probative facts concerning the nature and amount of work performed.  Employees seldom keep such records themselves; even if they do, the records may be and frequently are untrustworthy.  It is in this setting that a proper and fair standard must be erected for the employee to meet in carrying out his burden of proof.

> When the employer has kept proper and accurate records the employee may easily discharge his burden by securing the production of those records.  But where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes a more difficult problem arises.  The solution, however, is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work.  Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act.  In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.  The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to

20

negative the reasonableness of the inference to be drawn from the employee's evidence.  If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.  See Note, 43 Col.L.Rev. 355.

The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the requirements of [the FLSA].  And even where the lack of accurate records grows out of a bona fide mistake as to whether certain activities or non-activities constitute work, the employer, having received the benefits of such work, cannot object to the payment for the work on the most accurate basis possible under the circumstances.  Nor is such a result to be condemned by the rule that precludes the recovery of uncertain and speculative damages.  That rule applies only to situations where the fact of damage is itself uncertain.  But here we are assuming that the employee has proved that he has performed work and has not been paid in accordance with the statute. The damage is therefore certain.  The uncertainty lies only in the amount of damages arising from the statutory violation by the employer.  In such a case 'it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts.'  Story Parchment Co. v. Paterson Parchment Co., 282 U.S. 555, 563.  It is enough under these circumstances if there is a basis for a reasonable inference as to the extent of the damages.  Eastman Kodak Co. of New York v. Southern Photo Materials Co., 273 U.S. 359, 377--379; Palmer v. Connecticut Railway & Lighting Co., 311 U.S. 544, 560, 561; Bigelow v. RKO Radio Pictures, Inc., 327 U.S. 251, 263--266.

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. at 686-88; *see also United States v. Cole Enters.*, 62 F.3d 775 (6th Cir. 1995).

Plaintiffs have offered sufficient evidence to allow a reasonable factfinder to conclude that defendants sometimes failed properly to compensate plaintiffs for time spent working at defendants' warehouse before a job and for time spent driving between the warehouse and the job site.  Whether plaintiffs are able to offer sufficient evidence to allow the factfinder to make a reasonable inference as to the amount and extent of uncompensated work performed by plaintiffs is an issue for trial.  For this reason the court overrules defendants' motion for summary judgment as it relates to plaintiffs' allegation that defendants failed properly to

compensate them for time spent working at defendants' warehouse before a job and for time spent driving between the warehouse and the job site.

> 2.  *Whether plaintiffs have offered sufficient evidence that defendants failed properly to compensate them because defendants failed to record compensable time spent donning and removing protective gear before and after work and before and after lunch*

Plaintiffs offer the Pierce Dec. as support for their assertion that plaintiffs were not paid for the time they spent donning and removing protective clothing before and after work and before and after lunch:

> 5.  At the beginning of the day, before we were on the clock, we had to don our asbestos gear.
>
> 6.  During our lunch break we had to remove our asbestos protection gear, shower, and change into our street clothes before eating lunch.  We were off the clock during this time.
>
> 7.  At the end of the day, we had to remove our asbestos gear and shower again, and again we were not paid for this time.

Pierce Dec. at 1-2.  Plaintiffs contend that defendants owe compensation for this time.[5] Defendants contend that plaintiffs have offered insufficient evidence to create a genuine issue of material fact regarding the failure to pay for time spent donning and removing protective gear:

> Once again, Plaintiffs do not and cannot point to a single date on which they were underpaid for the donning of their protective gear. . . . Defendants gave their employees a paid fifteen-minute period to don such gear.  Plaintiffs cannot point to a

---

[5]  Defendants do not contend that they were not required to pay plaintiffs for this time. The obligation to pay employees for time spent donning and removing protective gear is widely recognized.  *See, e.g., Tum v. Barber Foods, Inc.*, 360 F.3d 274, 279 (1st Cir. 2004) (citing *Steiner v. Mitchell,* 350 U.S. 247, 76 (1956), and *Mitchell v. King Packing Co.,* 350 U.S. 260 (1956)).

> single date that they were not given or compensated for this fifteen-minute period.
> With respect to start times, Plaintiffs claim that there is a dispute over the start time of Plaintiff Pierce.  But again, plaintiffs cannot point to a single date on which the start time of Pierce was incorrectly recorded.

Defendants' Reply Brief (Docket #90), p.8.

Again, defendants misconceive the burden that *Mt. Clemens* requires plaintiffs to shoulder to create a genuine issue of material fact.  Plaintiffs have provided sufficient evidence to allow a reasonable factfinder to conclude that defendants sometimes failed to compensate plaintiffs for donning and removing protective gear.  Plaintiffs now have the burden of offering sufficient evidence to allow a factfinder to make a reasonable inference as to the amount of uncompensated time spent donning and removing protective gear, and defendants must offer counter-evidence as to the amount of uncompensated time.  For this reason the court overrules defendants' motion for summary judgment as to plaintiffs' allegations of uncompensated time spent donning and removing protective gear.

IV.

For the reasons given above the court overrules defendants' motion for summary judgment in its entirety.

This case is ordered to mediation before Magistrate Judge David A. Perelman, said mediation to be completed prior to October 31, 2005. Judge Perelman will contact the parties to arrange a settlement conference.  Trial is set for November 29, 2005.  A Trial Order shall issue promptly.

**IT IS SO ORDERED.**

23

Date:  September 23, 2005          /s/Patricia A. Hemann
                                   Patricia A. Hemann
                                   United States Magistrate Judge